**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CANDY SHATRAW,**
o/b/o **K.C.Y., III,**

                        **Plaintiff,**              **7:11-cv-13**
                                                   **(GLS)**

          **v.**

**MICHAEL ASTRUE,** Commissioner of
Social Security,

                        **Defendant.**
_____

**APPEARANCES:**                **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Conboy, McKay Law Firm        LAWRENCE D. HASSELER,
Carthage Office                   ESQ.
307 State Street
Carthage, NY 13619

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN    JASON P. PECK
United States Attorney          Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Mary Ann Sloan
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Candy Shatraw o/b/o K.C.Y., III ("KCY"), challenges the Commissioner of Social Security's denial of Supplemental Security Income ("SSI"),[1] seeking judicial review under 42 U.S.C. §§ 405(g).  (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering the arguments, the court affirms the Commissioner's decision.

### II. Background

On October 10, 2007, Shatraw protectively filed an application on behalf of KCY for SSI under the Social Security Act ("Act"), alleging disability since October 1, 2006.  (Tr.[2] at 95.)  After the application was denied, Shatraw requested a hearing before an Administrative Law Judge (ALJ), which was held on January 13, 2010.  (*Id.* at 26-50.)  On January 29, 2010, the ALJ issued a decision denying the requested benefits, which became the Commissioner's final decision upon the Social Security

---

[1]   Shatraw refers to Disability Insurance Benefits (DIB) in paragraph 2 of the Complaint.  (*See* Compl. ¶ 2, Dkt. No. 1.)  However, because Shatraw did not include a request for DIB in her application or raise the issue in her papers, it will not be discussed. (*See generally* Dkt. No. 12.)

[2]   "(Tr. )" refers to the page of the Administrative Transcript in this case. (*See* Dkt. No. 10.)

Administration Appeals Council's denial of review. (*Id.* at 12-25, 1-3.)

Shatraw commenced the present action by filing a complaint on January 5, 2011, seeking review of the Commissioner's determination. (Compl., Dkt. No. 1.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (Dkt. Nos. 9, 10.)  Each party, seeking judgment on the pleadings, filed a brief.  (Dkt. Nos. 12, 15.)

### III.  Contentions

Shatraw avers that the Commissioner's decision is not supported by substantial evidence and was arrived at through the application of incorrect legal standards.  (Dkt. No. 12 at 9-14.)  In addition to her general argument that the Commissioner's decision was unsupported by substantial evidence, Shatraw contends specifically that the ALJ: (1) did not sufficiently specify his reasons for finding less than marked limitation in two functional domains; and (2) failed to consider how KCY functions outside of his supportive setting.  (*Id.*)  The Commissioner counters that the appropriate legal standards were applied and that the decision is supported by substantial evidence. (*See generally* Dkt. No. 15.)

### IV.  Facts

The evidence in this case is undisputed and the court adopts the

parties' factual recitations.  (*See* Dkt. No. 12 at 1-9; Dkt. No. 15 at 1-13.)

## V.  Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here.  For a full discussion of the standard of review, the court refers the parties to its previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

## A.    Child Disability Determination

The Social Security Administration has established a three-step evaluation process by which to determine whether individuals under the age of 18 are disabled.  20 C.F.R. § 416.924(a).  The first inquiry is whether the child is engaging in substantial gainful activity.  *Id.*  If so, the child is determined not to be disabled, and the inquiry ends.  *Id.*  If the child is not engaging in substantial gainful activity, the ALJ must determine whether the child has "an impairment or combination of impairments that is severe."  *Id.*  An impairment is not severe if it is merely a "slight abnormality . . . that causes no more than minimal functional limitations."  *Id.* § 416.924(c).  If the ALJ finds in the negative, a determination of non-

4

disability is made, and the analysis goes no further.  *Id.*  Where a severe impairment or combination of impairments exists, however, the final inquiry is whether the child's impairment or combination of impairments "meets, medically equals, or functionally equals the listings."  *Id.* § 416.924(a).  If the child has such an impairment or combination of impairments, and the duration requirement is met, a finding of disability is made.  *Id.*

**B.    Functional Equivalency**

If a claimant's impairments do not meet or medically equal an impairment included in the listings, "the Commissioner must still determine whether the impairment or combination of impairments are functionally equivalent to a Listing."  *Martinbeault v. Astrue*, No. 1:07-CV-1297, 2009 WL 5030789, at *7 (N.D.N.Y. Dec. 14, 2009) (citing 20 C.F.R. § 416.926a). A finding of functional equivalence requires "marked" limitations in two, or an "extreme" limitation[3] in one, of the following six "domains": "(i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating

---

3   A "marked" limitation is one that "interferes seriously" with the claimant's "ability to independently initiate, sustain, or complete activities" within the given domain, while an "extreme" limitation "interferes very seriously" with those abilities.  20 C.F.R. §§ 416.926a(e)(2)(i), (3)(i).

objects; (v) [c]aring for yourself; and (vi) [h]ealth and physical well-being."

20 C.F.R. §§ 416.926a(a), (b)(1)(i)-(vi).  All of the claimants impairments,

severe or otherwise, are considered in a functional equivalency analysis.

*Id*. § 416.926a(a).  The ALJ found that KCY's only marked limitation was in

"attending and completing tasks."  (Tr. at 19-20.)

Shatraw argues first that the ALJ failed to specify his reasons for

finding that KCY suffered less than marked limitations in "acquiring and

using information" and "caring for []self," and that substantial evidence

supports findings of "marked" or "extreme" limitations in both domains.

(Dkt. No. 12 at 10-13.)  As the Commissioner argues, however, the ALJ's

functional equivalency analysis is supported by substantial evidence and

will not be disturbed.

      1.   Acquiring and Using Information

This domain contemplates a child's ability to "acquire or learn

information, and how well [he] use[s] the information [he has] learned."  20

C.F.R. § 416.926a(g).  Children in KCY's age range "should be able to

learn to read, write, and do math, and discuss history and science," both in

"academic" and "daily living situations."  *Id.* § (g)(2)(iv).  The ALJ found that

KCY had less than marked limitation in this domain, reasoning that his

deficiencies in math and reading were outweighed by the opinion of his special education teacher, his ability to participate in general education classes with the assistance of a shared aide, and the fact that he did not require an extended school year.  (Tr. at 19.)  Contrary to Shatraw's contentions, this conclusion was articulated sufficiently and is supported by substantial evidence.

In support of her position regarding this domain, Shatraw relies principally on KCY's individual educational needs and an October 2008 report completed by his general education teacher, both of which were considered by the ALJ.  (Dkt. No. 12 at 12-13; Tr. at 18-19.)  In accordance with his Individualized Education Plan ("IEP"), KCY receives math, reading and English instruction in a special education setting.  (Tr. at 123.) Shatraw testified that KCY is below grade level in math and reading.  (*Id*. at 42.)  In 2008, KCY's general education teacher, Ms. Greer, indicated "serious" problems in three of the ten subsets in this domain: "[l]earning new material"; "[r]ecalling and applying previously learned material"; and "[a]pplying problem-solving skills in class discussions."  (*Id*. at 161.) Shatraw argues incorrectly and without support that a finding of "serious" problems in more than one subcategory requires a determination of

7

"marked" limitation in that domain.  (Dkt. No. 12 at 12.); *See Frye ex rel. A.O. v. Comm'r of Soc. Sec.*, No. 5:10-CV-98, 2010 WL 6426346, at *11-12 (N.D.N.Y. Nov. 12, 2010) (finding that substantial evidence supported the ALJ's finding of less than marked limitation in a domain despite a teacher report indicating "serious" and "very serious" limitations in subsections of that domain).

Despite KCY's educational needs and Ms. Greer's report, the weight of the evidence supports a finding of less than marked impairment.  In a January 2008 teacher questionnaire, KCY's special education teacher, Ms. Ashlaw, reported no "serious" or "very serious" problems in this domain, instead finding only "obvious" problems in two of the ten subcategories, and "slight" problems in the remaining subsets.  (*Id.* at 113.)  Nine months later, Ashlaw indicated that KCY had an "obvious" problem in just one subcategory, and noted that when he took his medication—which he began doing in March 2008—KCY was able to "focus and complete his work," and "be successful in school."  (*Id.* at 147, 152, 211.)  On his second grade report card, KCY's grades ranged from 82 to 99, with the majority of his marks falling in the mid-90 range.  (*Id.* at 176.)  As noted by the ALJ, KCY did not require an extended school year, and had never been made to

repeat a grade.  (*Id.* at 32-33, 42.)  Furthermore, Shatraw testified to KCY's ability to read books at home without assistance as well as count coins and understand their value.  (*Id.* at 35, 42.)

Accordingly, despite KCY's deficiencies in math and reading, the ALJ's determination of less than marked limitation in this domain is supported by substantial evidence.

2.  Caring for Self

This domain contemplates a claimant's ability to "maintain a healthy emotional and physical state."  20 C.F.R. § 416.926a(k).  This includes how well the claimant gets his "physical and emotional wants and needs met in appropriate ways; how [he] cope[s] with stress and changes in [his] environment; and whether [he] take[s] care of [his] own health, possessions, and living area."  *Id.*  Noting that KCY "demonstrate[s] a sense of responsibility for himself and respect for others," the ALJ found his limitation in this domain to be less than marked.  (Tr. at 24.) Substantial evidence in the record supports this conclusion.

Shatraw argues primarily that the ALJ failed to adequately explain why reports from Ashlaw and Greer indicating "serious" and "very serious" problems in subsets of this domain did not result in a finding of marked or

9

extreme limitation.  (Dkt. No. 12 at 11-12.)  She argues further that the ALJ

erred by omitting consideration of KCY's near-suspension from his school

bus.  (*Id.* at 12.)  While the ALJ could undoubtedly have articulated his

reasoning more thoroughly, his finding of less than marked limitation in this

domain is nevertheless supported by substantial evidence.

     In an October 2008 report, Greer indicated that KCY had "serious"

problems in: "[h]andling frustration appropriately"; "[b]eing patient when

necessary"; and "[i]dentifying and appropriately asserting emotional

needs."  (Tr. at 165.)  In January 2008, Ashlaw reported that KCY had

"serious" problems in four subcategories of this domain.  (*Id.* at 117.)  She

revised her assessment ten months later, finding no "serious problems,"

but indicating that KCY had a "very serious" problem "[c]ooperating in, or

being responsible for, taking needed medications."  (*Id.* at 151.)

     On the same date that she noted KCY's "very serious" problem,

however, Ashlaw reported that KCY's "ability to take care of personal

needs and health and to demonstrate a sense of responsibility for himself .

. . and respect for others, including safety" was "age appropriate."  (*Id.* at

155.)  Shatraw testified that while KCY was unable to bathe himself,[4] he was capable of feeding himself using ordinary utensils, tying his own shoes, brushing his teeth and, if she set out his clothes in advance, he could dress himself.  (*Id.* at 33-34.)  She testified further that KCY was "very mature" in his ability to care for personal belongings.  (*Id.* at 42-43.)  While KCY was nearly suspended from his school bus for disruptive behavior, Shatraw testified that such behavior ended once KCY's brother was moved to a different school.  (*Id.* at 44.)

Accordingly, the ALJ's finding that KCY suffered less than marked limitation in his ability to care for himself is supported by substantial evidence.

## C.    Consideration of Supportive Setting

Shatraw contends next that the ALJ erred in failing to consider evidence of how KCY functions outside of his supportive educational setting.  (Dkt. No. 12 at 13-14.)  That contention, however, is without merit.

An ALJ is required to consider the claimant's "need for a structured setting and the degree of limitation in functioning [the claimant has] or

_____

[4] Shatraw suggested that KCY may have never been taught how to bathe himself, noting that she was unsure "that his daddy even taught him."  (Tr. at 44.)

11

would have outside the structured setting."  20 C.F.R. §

416.924a(b)(5)(iv)(C).  "Even if [the claimant] is able to function adequately

in the structured or supportive setting, [the ALJ] must consider how [he]

function[s] in other settings and whether [he] would continue to function at

an adequate level without the structured or supportive setting."  *Id.*  While

the ALJ must consider these factors, "[t]he regulation does not command

the ALJ to explicitly discuss his consideration."  *Watson ex rel. K.L.W. v.

Astrue*, No. 07-CV-6417T, 2008 WL 3200240, at *5 (W.D.N.Y. Aug. 5,

2008) (internal quotation marks and citation omitted).

Although the ALJ did not explicitly reference 20 C.F.R. §

416.924a(b)(5)(iv)(C), it is clear that he considered KCY's limitations both

within and without his structured educational setting.  In addition to the

findings of KCY's special education teacher, the ALJ assessed the report

of his general education teacher as well as testimony from Shatraw

regarding his functioning at home.  (*See generally* Tr. at 15-25.)  Thus, the

ALJ satisfied his duty under  20 C.F.R. § 416.924a(b)(5)(iv)(C), and

Shatraw's contention fails.

**D.**   **Substantial Evidence**

Finally, Shatraw argues generally that the ALJ's decision is

12

unsupported by substantial evidence.  (Dkt. No. 12 at 10.)  For the reasons

articulated above, and upon review of the remainder of the record, the

ALJ's decision is supported by substantial evidence and is affirmed.

## VII.  Conclusion

WHEREFORE, for the foregoing reasons, it is hereby

ORDERED that the decision of the Commissioner is **AFFIRMED** and

Shatraw's complaint is **DISMISSED**; and it is further

ORDERED that the Clerk close this case and provide a copy of this

Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 22, 2012
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court